956 F.2d 269
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INMON TRUCK SALES, INC., Plaintiff-Appellee,
v.
PETERBILT OF NORTHWEST OHIO, INC., Defendant-Appellant.
 No. 91-3621.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1992.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant-appellent Peterbilt of Northwest Ohio, Inc. (Peterbilt) appeals the judgment for plaintiff-appellee Inmon Truck Sales, Inc. (Inmon) following a jury trial. Inmon filed the action claiming breach of a contract by Peterbilt. Peterbilt claims that the District Court erred in refusing to instruct the jury that the parties' course of dealing may be considered in determining whether a contract exists. Peterbilt also claims that the jury award of $158,000 is not supported by the evidence and should be set aside. For the reasons stated below, we find these claims to be without merit and AFFIRM the decision of the District Court.
 
 I.
 
 2
 Inmon is a used truck broker in North Little Rock, Arkansas. Peterbilt is a new and used truck dealer located in Findlay, Ohio. In the summer of 1989, Peterbilt reached an agreement to purchase a large number of used International Harvester trucks from Bulk Material, Inc. through Frank Byers, a truck dealer. Peterbilt understood at the time of the agreement that the sale was contingent on various factors, including the fact that Bulk Materials was negotiating the sale with other dealers.
 
 
 3
 Charles Schneider, an employee of Peterbilt, contacted David Inmon, owner of Inmon Truck Sales, concerning the possibility of Inmon purchasing 150 of the trucks. The specific terms of the agreement were negotiated and decided including price, payment schedule, delivery schedule, and deposit amount. The parties agreed that each truck would be purchased for $6,500. It is disputed between the parties whether Inmon was informed that the agreement between Inmon and Peterbilt was contingent upon Peterbilt completing the purchase from Bulk Materials. The agreement reached was oral and Inmon subsequently wrote a letter to Schneider, dated June 30, 1989, which outlined the terms of the agreement.
 
 
 4
 Subsequent to the agreement and letter, Inmon attempted to find prospective purchasers for the trucks. Inmon testified that the company spent about $5,000 on advertisements in trade papers in an effort to attract buyers. Eventually, Inmon reached an agreement with Phil Mitchell, a truck dealer in Alabama, to purchase all the trucks at a price of $10,000 per truck.
 
 
 5
 The deal between Byers, Bulk Materials and Peterbilt for the purchase of the trucks was never consummated. Bulk Materials instead entered into a purchase agreement with another dealer. Inmon was informed in August 1989 that Peterbilt would not be providing the trucks. Inmon claims that it was unable to "cover" its own commitment to sell the trucks to Mitchell.
 
 
 6
 Inmon brought a diversity action against Peterbilt on alternative theories of breach of contract and negligent misrepresentation. Inmon claimed as damages the difference between the purchase price he had agreed upon with Peterbilt, $6,500, and the sales price to which Mitchell had agreed, $10,000. The jury returned a verdict against Peterbilt on the breach of contract count of "$158,000 + legal expenses" and awarded no damages on the negligent misrepresentation claim. The district judge found that the award of legal fees was made "ultra vires" and did not permit the fee award. He found, however, that the jury award bore "a sufficient relationship to the proof" and upheld the jury decision as to damages.
 
 II.
 
 7
 Peterbilt's first argument on appeal is that the District Court erred in refusing to instruct the jury that under Ohio law, the parties' course of dealing may be considered in determining whether a contract exists. Inmon submitted a jury instruction to the district judge which would have instructed the jury that prior business dealings may establish "a common basis of understanding for interpreting expressions and conduct" and thus serve as an indication of whether subsequent interaction amounted to an agreement or contract. The district judge declined to give the requested instruction. Inmon asserts that no evidence of a course of dealing exists, that evidence of a course of dealing can not be used to determine the existence of a contract, only its meaning, and that the jury instructions given were adequate.
 
 
 8
 The Ohio Revised Code § 1301.11 defines course of dealing as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Peterbilt bases its argument for a course of dealing on the previous sale of a truck by Peterbilt to Inmon. In June of 1989, Inmon purchased a 1977 Astro truck from Peterbilt. The deal was consummated when Inmon signed and returned an invoice sent to it by Peterbilt. Peterbilt argues that this transaction establishes a course of dealing and that Inmon should not have considered the agreement for the sale of the trucks binding until the receipt of an invoice.
 
 
 9
 We find that the sale of the single truck differs substantially from the potential sale at issue in this case. When purchasing the Astro truck, Inmon realized that the sale was for only one truck that was currently within Peterbilt's inventory. The agreement to purchase the 150 trucks was more complicated and involved trucks which Peterbilt was to obtain in the future. The sales agreement for the 150 trucks involved purchases and deliveries over an extended period. In addition, Inmon knew that the trucks were not currently in the possession of Peterbilt and may have reasoned that no invoice could be provided until possession of the trucks was obtained by Peterbilt. The fact that an invoice was requested does not conclusively indicate that Inmon did not believe the contract was complete until the invoice was signed. Rather, Inmon may have assumed that a completed contract was made and that the actual transfers of the trucks would be recorded by the invoices as the sales occurred.
 
 
 10
 Inmon argues that one transaction should not be enough to establish a course of dealing. In support of their assertion, they cite case law from several circuits and district courts. Our Court has yet to address this issue. However, because we find that the previous transaction between Peterbilt and Inmon is not sufficiently similar to establish a precedent to the transaction at issue, we need not decide whether a single sale is adequate to establish a course of dealing.
 
 
 11
 In addition, any error which may have occurred by the failure to give the course of dealing instruction is negated by the instructions which were given. In its charge to the jury, the District Court gave the following instruction:
 
 
 12
 In your analysis of whether the parties agreed upon the essential terms of the contract, you are to give words their plain, popular and ordinary meaning; you are to give the language or words used by the parties in the agreement their plain, popular and usual significance, unless it appears that the words have a particular meaning common to a certain trade or profession. You are to ascertain the meaning that is to be given to the word from the testimony; you are to look at the testimony to ascertain what particular significance a word may have in a trade or profession. That is, you are to consider whether any practice or method of dealing has such regularity of observance in a place, location, or trade, as to justify an expectation that it will be observed with respect to the transaction in question.
 
 
 13
 This instruction sufficiently raises the jury awareness of prior practices and agreements between the parties.
 
 III.
 
 14
 Peterbilt objects to the jury award of $158,000 on the breach of contract claim. Peterbilt contends that the award is unsupported by competent, credible evidence and thus cannot be allowed to stand. This Circuit has held that plaintiff's failure to produce adequate evidence will justify the reversal of a jury award. Cincinnati Fluid Power, Inc. v. Rexnord, 797 F.2d 1386, 1395 (6th Cir.1986).
 
 
 15
 Peterbilt asserts that the evidence at trial showed that the fair market value of the trucks was below the $6,500 price agreed upon by Peterbilt and Inmon. We find that adequate evidence existed for the jury to conclude that Inmon suffered some loss when Peterbilt breached the contract. Robert Lozano, a vice-president for Inmon, testified that a representative of Bulk Materials, Aloysius Krebs, offered to sell Inmon the trucks for about $7,500 after the contract with Peterbilt was breached. Joint App. at A202. Krebs testified that he was unsure that he had ever made an offer to Inmon and that if he had, it would have been for $6,000. He admitted that he had said at his deposition that he had not offered any trucks to Inmon and that he was still not sure that he had made an offer. Joint App. at A282-4. The jury is entitled to consider the conflicting testimony and make a credibility determination. If the jury believed Lozano's testimony, they could have determined that Inmon would have suffered only a $1,000 loss on each truck if he had accepted Krebs' offer. This $1,000 loss multiplied by 150 trucks and added to the advertising dollars spent totals a jury award close to the one awarded by the jury in this case. The fact that Inmon did not accept Krebs' offer or that the trucks eventually sold for $5,500 does not make the jury determination unreasonable. We thus find that the award is supported by the evidence and AFFIRM the jury verdict.